Jennifer Chang, Esq. (JC5716)
**KROLL HEINEMAN CARTON, LLC**
Metro Corporate Campus I
99 Wood Avenue South, Suite 307
Iselin, New Jersey 08830
Tel: (732) 491-2100
Fax: (732) 491-2120
*Attorneys for Petitioners*

**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| NEW JERSEY BUILDING LABORERS STATEWIDE BENEFIT FUNDS AND THE TRUSTEES THEREOF, | Hon. |
| | Civil Action No. 20- |
| Petitioners, | **CIVIL ACTION** |
| v. | **PETITION TO CONFIRM ARBITRATION AWARD** |
| JOHN D. LAWRENCE, INC., | |
| Respondent. | |

Petitioners New Jersey Building Laborers' Statewide Benefit Funds ("Funds") and the Trustees thereof ("Trustees") (collectively, the "Petitioners") by their undersigned attorneys, as and for their Petition, allege and say:

1. The Funds petition this Court for an Order pursuant to the Federal Arbitration Act, ("FAA"), 9 U.S.C.A. §§ 9 and 13, confirming award of the Arbitrator issued in favor of Petitioners on June 30, 2020, and directing that judgment be entered accordingly. This Petition is made on the following grounds.

2. At all times relevant, the Funds were, and still are, trust funds within the meaning of Section 302(c)(5) of the Labor Management Relations Act, ("LMRA"), 29 U.S.C. §186(c)(5), and employee benefit plans within the meaning of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §1132 (e) and (f), and are administered at 3218 Kennedy Boulevard, Jersey City, New Jersey 07306.

3.     The Trustees of the Funds are fiduciaries within the meaning of Section 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A).  The Trustees maintain their principal place of business at 3218 Kennedy Boulevard, Jersey City, New Jersey 07306.

4.     Upon information and belief, at all times relevant, Respondent John D. Lawrence, Inc. ("Respondent") is, and still is, a business entity duly organized and existing under the laws of the State of New Jersey, with a principal office at 279 Mount Royal Road, Sewell, New Jersey 08080.

5.     The jurisdiction of this Court is based upon Section 502 (e) and (f) of ERISA, as amended, 29 U.S.C. §1132(e) and (f), and FAA, 9 U.S.C.A. § 9.  Venue properly lies in this District pursuant to 29 U.S.C. § 1332(e)(2) because the Funds maintain their principal offices in New Jersey and are administered therein and the underlying arbitration took place in New Jersey.

6.     Respondent is a signatory to a collective bargaining agreement ("CBA"), which is a valid enforceable, and irrevocable agreement. A copy of the pertinent portions of the CBA and the applicable Short Form Agreement binding Respondent thereto are attached hereto as Exhibits "A" and "B" respectively.

7.     Respondent is also bound by the Declaration of Trust of the Funds.  A copy of the pertinent portions of the applicable Trust Agreement is attached hereto as Exhibit "C".  Under the terms of the applicable CBA and trust agreement, Respondent is required to make contributions to the Funds.

8.     The Trust Agreement provides: "The Trustees may take any action necessary or appropriate to enforce payment of contributions, interest damages, and expenses provided for herein." In accordance with the Trust Agreement, a Permanent Arbitrator has been appointed to resolve claims of delinquent contributions to the Funds.

9.     After finding that Respondent was duly notified of the hearing and considering all of the evidence presented in connection therewith, the Permanent Arbitrator issued an award in writing against the Respondent identified in Paragraph 4 of this Petition – copy of which is

attached as Exhibit "D".

10. With the award, the Permanent Arbitrator directed Respondent to cease and desist from continuing to violate the Trust Agreement and pay forthwith all delinquent contributions to the Funds, plus interest, attorney's fees and costs. The Funds promptly served signed copy of the award upon Respondent. Notwithstanding the Opinion and Award of the Arbitrator and notice of the same, Respondent has failed and refused in all respects, and continues to fail and refuse in all respects, to comply with the Opinion and Award issued by the arbitrator.

**WHEREFORE**, Petitioners pray for the following relief:

(a) An Order confirming the Arbitration Award;

(b) Entry of a judgment or decree by the clerk which may be enforced as any other judgment or decree;

(c) Costs of this petition and of all subsequent proceedings and disbursements including, but not limited to, court's filing fee in the amount of $400.00;

(d) Costs, attorney's fees, and interest thereupon, as provided by law; and

(e) Such other relief as the Court deems equitable.

**KROLL HEINEMAN CARTON, LLC**
*Attorneys for Petitioners*

*S/ JENNIFER CHANG*

By: ______________________________
JENNIFER CHANG

DATED: August 13, 2020

# EXHIBIT A

## AGREEMENT

### Preamble

WHEREAS, this Collective Bargaining Agreement (hereinafter the "Agreement") is entered into by the undersigned Employer (hereinafter "Employer") and the Building Laborers' District Councils and Local Unions of the State of New Jersey (hereinafter the "Union"), and

WHEREAS, the Building and Construction Laborers' District Councils and Local Unions of the State of New Jersey bound by this Agreement enter this Agreement individually and it is further understood that the liabilities of said District Councils and Local Unions shall be several and not joint, and

WHEREAS, it is the purpose of this Agreement to build, develop and maintain a harmonious working relationship between the Employer and the Unions in which the rights of both parties are recognized and respected and the work is accomplished with the efficiency, economy and quality that is necessary in order to expand the work opportunities of both parties,

NOW, THEREFORE, in consideration of the mutual covenants herein expressed, BE IT AGREED AS FOLLOWS

### Article I: Recognition and Scope of Agreement

1.10 Union Recognition The Employer recognizes that the Building and Construction District Councils and Local Unions bound hereby represent a majority of em-

of all reassignments. It shall be the objective of both the Employer and the Union to make reasonable efforts to keep apprentices working so that they can complete the apprentice program and become journey workers in a reasonable amount of time.

An apprentice shall not be penalized for taking off from work to attend offsite training required by the JATC (although time off for training shall be unpaid).

## Article XIII: Portability

**13.00 Portability.**
The Employer, provided it has notified the local union in advance of the start of the project that the project was to begin and is otherwise in compliance with this Agreement and is not delinquent to the benefit or checkoff funds established hereunder, shall be allowed liberal portability of key employees subject, however, to the territorial local union's right to fair representation in the Employer's workforce for the project. Key employees are laborers who are members of a local union signatory to this Agreement who have worked for the Employer for at least eight weeks in the previous six months.

## Article XIV: Fringe Benefit Funds

**14.00 New Jersey Building Laborers' Statewide Pension Fund.**
All Employers bound by this Agreement shall contribute such amount as has been allocated by the parties to the

New Jersey Laborers' Statewide Pension Fund which will be administered in accordance with the applicable trust agreement.

**14.10 New Jersey Building Laborers' Statewide Welfare Fund.**
All Employers bound by this Agreement shall contribute such amount as has been allocated by the parties to the New Jersey Laborers' Statewide Welfare Fund which will be administered in accordance with the applicable trust agreement.

**14.20 New Jersey Building Laborers' Statewide Annuity Fund**
All Employers bound by this Agreement shall contribute such amount as has been allocated by the parties to the New Jersey Laborers' Statewide Annuity Fund which will be administered in accordance with the applicable trust agreement.

**14.30 New Jersey State Political Action Committee**

All Employers bound by this Agreement shall deduct such amount as has been authorized from each employee's pay who signs an authorization for the New Jersey State Political Action Committee fund. Each laborers' local will be responsible for obtaining the signatures for these authorizations and for notifying the appropriate Employers which employees have authorized the political check off. Employers shall forward checkoff contributions to the fund as the specified rate in the same manner as they contribute to the fringe benefit funds established or main-

tained pursuant to this Agreement.

14.40 Organizing Dues

All Employers bound by this Agreement shall deduct such amount as has been authorized by the District Councils and/or Local Unions from each employee's pay who signs an authorization for the Laborers' Eastern Region Organizing Fund dues. Each laborers' local will be responsible for obtaining the signatures for these authorizations and for notifying the appropriate Employers which employees have authorized the organizing check off. Employers shall forward checkoff contributions to the fund as the specified rate in the same manner as they contribute to the fringe benefit funds established or maintained pursuant to this Agreement.

14.45 Working Dues

All Employers bound by this Agreement shall deduct such amount as has been authorized by the District Councils and/or Local Unions from each employee's pay who signs an authorization for working dues checkoff. Each laborers' local will be responsible for obtaining the signatures for these authorizations and for notifying the appropriate Employers which employees have authorized the organizing check off. Employers shall forward checkoff contributions to the fund as the specified rate in the same manner as they contribute to the fringe benefit funds established or maintained pursuant to this Agreement, or as otherwise directed by the District Councils.

14.50 Laborers'-Employers' Cooperation and Education Trust

All Employers bound by this Agreement shall pay such

amount as has been allocated by the parties to the Laborers'-Employers' Cooperation and Education Trust which will be administered in accordance with the applicable trust agreement. Employers shall contribute to this trust as the specified rate in the same manner as they contribute to the other fringe benefit funds

14.60 New Jersey Laborers' Health & Safety Fund

All Employers bound by this Agreement shall pay such amount as has been allocated by the parties to the New Jersey Laborers' Health & Safety Fund which will be administered in accordance with the applicable trust agreement. Employers shall contribute to this trust as the specified rate in the same manner as they contribute to the other fringe benefit funds

14.70 Building Laborers' of New Jersey Training and Education Fund

All Employers bound by this Agreement shall pay such amount as has been allocated by the parties to the Building Laborers' of New Jersey Training and Education Fund which will be administered in accordance with the applicable trust agreement. Employers shall contribute to this trust as the specified rate in the same manner as they contribute to the other fringe benefit funds

14.80 Building Contractors' Association of New Jersey Industry Advancement Fund

(a) All Employers covered by the terms of this Agreement shall pay to the Building Contractors Association of New Jersey, its successors or assigns, hereinafter referred to as the "BCA NJ", the sum of ten cents ($.10)

per hour for each of its employees covered hereunder.

(b) Payments to the BCA/NJ are due and payable at the same time and in the same manner as the N.J. Building Laborers Training and Education Fund and shall be reported on the same remittance forms as are used by the Building Laborers Fringe Benefit Funds throughout the State of New Jersey. All said forms shall be modified to reflect this payment requirement. Upon reasonable notice, a copy of each monthly Employers' Remittance Reports shall be forwarded to the BCA/NJ if so requested.

(c) In addition, the Union agrees to furnish the BCA/NJ copies of every signed individual collective bargaining agreements and/or acceptance of the terms and provisions of any collective bargaining agreement for work covered by this Agreement.

(d) The Union(s) will use every legal method available to insure uniform compliance and application of this payment as it does for collection of other funds.

(e) In consideration of the promises and obligations of the Employers to make contributions to the BCA/NJ, and in consideration of services to be directly and indirectly provided for such employers by the BCA/NJ, as determined by the BCA/NJ, and for the benefit of the construction industry generally, and for other good and valuable consideration, such consideration being specifically acknowledged by each employer signatory to this Agreement, each Employer agrees to all of the provisions of this Article and acknowledges that said contractual

provisions were made for the express, direct and exclusive benefit of the BCA/NJ a third party beneficiary under this Agreement, an Independent Agreement or any other form of agreement or understanding with any Employer for work covered under this Agreement for the term of this Agreement.

14.90 Due Date for Contribution Payments into Funds

(a) Contributions for funds established or maintained under the Agreement shall be paid within three days of the end of the weekly payroll period. Biweekly or monthly payments may be allowed in the discretion of the trustees or administrators of such funds where the Employer complies with such requirements as the trustees or administrators may set as a condition for biweekly or monthly payments. All such payments shall be made on properly prepared remittance forms prescribed or acceptable to the funds. Contributions to the training fund, LECET, NJHAS and all check-off funds shall be made in the same manner as other payments due under this Agreement.

(b) An Employer who is a member of the Building Contractors Association of New Jersey or one of its Affiliated Associations and who has assigned its bargaining rights to the Building Contractors Association of New Jersey and is thereby bound to this Agreement may pay such contributions on a monthly basis, with such contributions being due to the fund(s) on or before the fifteenth day of the month immediately following the month during which the contributions were earned. In the event that any such Employer becomes delinquent in making

payments to any fund created or maintained under this Agreement then such Employer shall lose the right to pay contributions on a monthly basis and shall thenceforth pay such benefits in accordance with Section (a) above. This provision shall not operate so as to limit the rights or remedies of the union or funds with respect to delinquencies as set forth elsewhere in this Agreement.

(c) For purposes of this Article any payment not received on or before the applicable due date set forth hereinabove shall be considered delinquent.

## Article XV: Collection of Amounts Due Under Agreement

### 15.10 Right to Strike and Picket for Delinquencies

If the Union is advised by any benefit or other fund created or maintained under this Agreement that an Employer is delinquent in contributions to the same, or if the Employer is delinquent in the payment of wages to its laborer employees, then the employees and the Union shall have the right to strike and/or picket until the wages, benefit or other fund contributions are paid in full, anything in this Agreement to the contrary notwithstanding. Where a delinquency is due from a subcontractor of the Employer for a project in another local union's territory, the local union where the ongoing project to be struck or picketed shall give the Employer five days written notice before commencing the job action.

If any employee loses employment because of any strike

or picketing to protest the failure to make such payments, the Employer shall be responsible to pay all wages and benefits for the time lost. Except for the foregoing the Union and the employees shall have the right to picket for non-payment of wages only when the same are not paid as required on the regular pay day.

### 15.20 Legal Remedies for Collection of Delinquencies

The Trustees or Administrators of any fund due contributions pursuant to this Agreement shall be entitled all rights accorded by law including but not limited to the right to demand, receive, sue for, and take such steps, including the institution and prosecution of or the intervention in any proceeding at law or in equity or in bankruptcy that may be necessary or desirable in their discretion to effectuate the payment and collection of any sum or sums and costs required to be paid to the Welfare, Pension or Annuity Funds under this Agreement.

### 15.30 Costs of Collection

(a) In addition to the other provisions of this Agreement relating any such funds, in the event the Employer is delinquent in the payment of contributions to the Funds, or wages, the delinquent Employer shall also be required to pay attorneys' fees and court and arbitration costs, if any, whenever the services of an attorney or arbitrator are necessary to recover the amount due. The Union or the Trustees, in their discretion, may also assess the Employer with interest at the current maximum legal rate

(b) The Attorneys' fees shall be as follows:

WITHOUT SUIT OR ARBITRATION
20% of the first $750.00
15% over $750.00
(Minimum $15.00 each fund)

WITH SUIT OR ARBITRATION
27 ½% of the first $750.00
22 ½% over $750.00
(Minimum $25.00 each fund)

(c) All disbursements and expenses including arbitration fees are additional. The foregoing shall apply unless changed by the Board of Trustees of any particular Fund.

(d) In addition to the above, the fund or funds, as the case may be, may further assess a delinquent Employer for any and all collection costs, court costs, attorneys' fees, telephone and correspondence costs, etc., which the fund or funds incur in collecting or attempting to collect the delinquent payments from the Employer. The Employer shall be required to pay collection costs and attorneys' fees irrespective of whether or not litigation is commenced. The Employer shall also pay interest on the amount due but interest may be waived in the discretion of the trustees of the affected funds.

15.40 Protection of Benefits

(a) Failure on the part of the Employer to pay the benefit fund contributions required pursuant to this Agree-

ment for each and all of the employees covered by this Agreement shall impose upon the Employer sole and full responsibility to assume the benefits of the employee(s) and their family(s) are entitled to from such funds.

(b) The Employer agrees that, after the termination date of the Agreement, he will continue to make contributions to the benefit funds when employing laborers covered hereunder pending the negotiation of a new agreement. The Employer or the BCA/NJ may terminate the obligation set forth under this provision by giving written notice to the Laborers' International Union of North America, Eastern Region office, as representative of the the local unions and district councils bound hereunder, of its intention to do so and the effective date thereof. All such notices shall be sent by certified mail and may not be effective until received.

15.50 Fund Rights and Duties

(a) The Trustees of the benefit funds shall have such rights and duties as set forth in the Plans and in the Agreements and Declarations of Trusts and any supplements or amendments thereto, all of which are incorporated herein by reference.

(b) The Employer agrees to join and concur with the Union in the execution of such petitions, applications, and forms that are required to be filed with the state and federal governmental agencies.

(c) The Employers agree that the trustees of the fund or funds shall have the right to require such reports by the Employers as are necessary to the fulfillment of the agreements and declarations of trusts and the contracts of

insurance, as may apply. The trustees and insurers shall also have the right to inspect at all reasonable times the payroll, employment and such other records of the Employer as are pertinent to questions of the accuracy or comprehensiveness of the reports of the Employer.

(d) In any event where an Employer is or has been delinquent in the payment of contributions to one or more of the funds established or maintained hereunder the Union and or the trustees shall have the power to require such Employer to post a reasonable cash bond to secure the Employer's future full and prompt compliance with the requirement for such contributions.

## Article XVI: Contractor Liability for Delinquency

16.10 Contractor Liability for Delinquency of Sub-Contractor

If the Employer subcontracts any work covered by this Agreement to any subcontractor or other person, the Employer shall be liable for all contributions owing to the funds established or to be established hereunder in the event the subcontractor or person fails to pay contributions to the said funds for employees covered by this Agreement employed by the said subcontractor or person.

16.20 Employer/Subcontractor Assignment of Payments

If however, the Employer is a subcontractor under this Agreement and becomes delinquent in the payment of

any contributions to any funds established or to be established hereunder, the Employer hereby assigns and transfers over all rights, title, and interest in all monies due it from the owner, construction manager, general contractor, any other contractor, or any governmental agency, to the said funds in the amount up to the sum due to the funds. Upon notice by the funds to the owner, construction manager, general contractor, other contractor, or governmental agency, the said owner, construction manager, general contractor, other contractor, or governmental agency shall immediately remit to the funds the amount claimed to be due to the funds. The amounts claimed to be due shall be immediately paid and, if any dispute arises over the amount paid and a refund is alleged to be due to the Employer, the matter may be submitted to arbitration. The funds liability in such case shall be limited to such refund and shall not include any consequential, special, punitive or other damages.

## Article XVII: Subcontracting

17.10 Subcontractors to Become Signatory to Agreement

The Employer agrees that all contractors or subcontractors who are engaged by the Employer to perform work of the kind covered by this Agreement at the site of construction, alteration, painting, demolition, asbestos removal, hazardous waste removal, or repair of a building, structure, or other construction work shall be or shall become a signatory to this Agreement or to become signatory to such other LIUNA affiliated local union having jurisdiction over the work in question. Furthermore, the

of the same, and including the decontamination of personal protective equipment, chemical and biological protective clothing, equipment, vehicles, and machinery relating to the above, and further including the erection, moving, servicing, and dismantling of all enclosures, scaffolding, barricades, and the operation of all tools and equipment in connection therewith, including but not limited to bobcats and forklifts, and the labeling, bagging, cartoning, crating, or other packaging of materials for disposal or storage; and the cleanup of the work site and all other work incidental to such remediation and abatement as set forth above, and all work performed within a containment area.

SP25.03 Hiring

In order to perpetuate the skills required in the remediation and abatement industry as covered by these Special Provisons, when new or additional employees are needed, the Employer agrees to give Laborers Local 1030 the first opportunity to provide such employees and will advise Laborers Local 1030 of the number of workers and the skills required. If Laborers Local 1030 is unable to refer qualified applicants to the Employer within 24 hours after the request, the Employer may then hire persons from other sources, provided the Employer notifies Laborers Local 1030 within two days after hire of the names and addresses of each person so hired outside the Laborers Local 1030 referral procedures.

SP26.00 Foremen and General Foremen

When six or more laborers are employed, and for every six laborers thereafter employed, a foreman shall be employed. The foreman shall be a working foreman who shall assist and supervise the laborers in their assigned tasks. Once eighteen laborers are employed, a General Foreman shall be employed. The General Foreman shall assist and supervise the foremen and shall not perform any work other than layout and supervision. Foremen and General Foreman shall be designated by the Business Manager.

SP 27.00 Wages and Benefits

Wages and benefits shall be paid as follows

| | 5/1/02 | 5/1/03 | 5/1/04 |
|---|---|---|---|
| Wages | $22.50 | 23.05 | 23.6[illegible] |
| Welfare | 3.30 | 4.00 | 4.2[illegible] |
| Pension | 3.60 | 3.80 | 4.00 |
| Annuity | 2.95 | 3.10 | 3.25 |
| Training* | .24 | .34 | .44 |
| LECET | .10 | .15 | .2[illegible] |
| Health & Safety Checkoffs | .05 | .05 | .05 |
| LEROF | .15 | .20 | .25 |
| NJSLPAC | .10 | .10 | .10 |
| Working Dues | 5% | 5% | 5% |

Wage and Benefit Reopener: This contract may be reopened upon notice by either the Union or the BCANJ to negotiate wages and benefits for the years 2005 through the end of this Agreement. The Employer signatory to this Agreement agrees to be bound by the wages and benefits negotiated by and between the BCANJ and the Unions and that such wages and benefits shall be incorporated into this Agreement.

*The employer contribution to the BCANJ Construc-

# EXHIBIT B

Section 16. **INFORMATION TO PARTICIPANTS AND BENEFICIARIES.** The Trustees shall provide participants and beneficiaries such information as may be required by law.

Section 17. **ACCOUNTANTS AND ACTUARIES.** The Trustees shall engage one or more independent qualified public accountants and one or more enrolled actuaries to perform all services as may be required by applicable law and such other services as the Trustees may deem necessary.

Section 18. **RECIPROCITY AGREEMENTS.** The Trustees may, in their sole discretion, enter into such reciprocity agreement or agreements with other pension plans as they determine to be in the best interests of the Fund, provided that any such reciprocity agreement or agreements shall not be inconsistent with the terms of this Trust Agreement.

## ARTICLE V

### Contributions to the Fund

Section 1. **RATE OF CONTRIBUTIONS.** In order to effectuate the purposes hereof each Employer shall contribute to the Fund the amount required by any Collective Bargaining Agreement or other written agreement requiring contributions to the Fund. The rate of contribution shall at all times be governed by the Collective Bargaining Agreement or other Fund-approved agreement then in force and effect, together with any amendments, supplements or modifications thereto. Notwithstanding the foregoing, in the event that an Employer is required by applicable law to contribute to the Fund despite the expiration of the Employer's

Collective Bargaining Agreement, that obligation to contribute shall be deemed to also arise under this Trust Agreement.

Section 2. **EFFECTIVE DATE OF CONTRIBUTIONS.** All contributions shall be made effective as required by the Collective Bargaining Agreement or other Fund-approved agreement and shall continue to be paid as long as the Employer is so obligated by such agreement or by applicable law.

Section 3. **MODE OF PAYMENT.** All contributions shall be payable and due to the Pension Fund on a monthly basis. and shall be paid in the manner and form determined by the Trustees. More specifically, the contributions owed for each month shall be due on the twentieth (20th) day of the following month.

Section 4. **DEFAULT IN PAYMENT.** If an Employer fails to make contributions to the Fund when due, the Employer shall be in default and the Trustees, in their discretion, may require the Employer to pay interest on all past due contributions at the rate of one and one-half percent (1 ½%) compounded per month (or such lesser amount as they may set) from the date when the contributions were due until the date paid. Further, the Trustees, in their discretion, may require such a defaulting Employer to pay an additional amount equal to twenty percent (20%) of the unpaid contributions as liquidated damages as authorized by applicable federal law. In addition, the Trustees, in their discretion, may require such a defaulting Employer to pay the expenses incurred by the Fund in collecting contributions, interest or damages, which expenses may include attorneys' and accountants' fees. The Trustees may take any action necessary or appropriate to

enforce payment of the contributions, interest, damages, and expenses provided for herein, including, but not limited to, proceedings at law or in equity. The Fund and Trustees shall not be required to exhaust any grievance or arbitration procedure provided by a Collective Bargaining Agreement or otherwise with respect to the enforcement of such Employer obligations, but rather shall have immediate access to the courts, as provided under applicable law, or to designate a permanent arbitrator to hear and determine collection disputes. The default of an Employer shall not relieve any other Employer of his obligation to the Fund.

Section 5. **REPORTS AND AUDITS.** Each employer shall submit to the Fund all reports and documents as the Trustees deem necessary or appropriate to collect or verify contributions. Each Employer, at the request of the Trustees, shall submit to an audit of the appropriate records of the Employer to verify that the correct amount of contributions or other payments due the Fund has been or will be paid. Such an audit may include records relating to employees not covered by the Fund to the extent necessary or appropriate to verify contributions. No use shall be made of information gathered during an audit other than uses relating to administration of the Fund.

Section 6. **PRODUCTION OF RECORDS.** Each Employer shall promptly furnish to the Trustees, on demand, the names of his Employees, their Social Security numbers, the hours worked by each Employee and such other information as the Trustees may reasonably require in connection with the administration of the Trust Fund and for no other purpose. The Trustees may, by their respective representatives, examine the pertinent employment and payroll records of each Employer at the Employer's place of business whenever such examination is deemed

necessary to advisable by the Trustees in connection with the proper administration of the Trust Fund. The Union and its Affiliates shall,.upon the request of the Trustees, promptly furnish information in respect to an Employee's employment status.

Section 7. **REFUND OF CONTRIBUTIONS.** In no event shall any Employer, directly or indirectly, receive any refund on contributions made by it to the Fund (except in case of a bona fide erroneous payment or overpayment of contributions, to the extent permitted by law), nor shall an Employer directly or indirectly participate in the disposition of the Fund or receive any benefits from the Fund. Upon payment of contributions to the Fund, all responsibilities of the Employer for each contribution shall cease, and the Employer shall have no responsibilities for the acts of the Trustees, nor shall an Employer be obligated to see to the application of any funds or property of the Fund or to see that the terms of the Trust Agreement have been complied with.

## ARTICLE VI

### Plan of Benefits

Section 1. **ESTABLISHMENT OF PLAN.** The Trustees shall formulate and adopt a written plan or plans for the payment of such retirement or pension benefits, death benefits, and related benefits, as are feasible.. The formulation and design of the Pension Plan is committed to the sole discretion of the Trustees, subject only to the requirements that the Pension Plan comply at all times with applicable federal law and regulations and that no provision of the Pension Plan

the Trustees. All other expenses incurred pursuant to Article IV hereof shall be paid by the Fund.

**IN WITNESS WHEREOF,** the undersigned do hereunto cause this instrument to be duly executed on the day and year first above written.

For the International Union

BY: ______________________
RAYMOND M. POCINO

For the Employers

BY: ______________________
JACK KOCSIS, JR.

Union Trustees

BY: ______________________
RAYMOND M. POCINO

BY: ______________________
PATRICK C. BYRNE

Employer Trustees

BY: ______________________
JOSEPH NATOLI

BY: ______________________
JACK KOCSIS, JR.

# EXHIBIT C



# EXHIBIT D

| | |
|---|---|
| **In the Matter of Arbitration**<br><br>**between**<br><br>**NEW JERSEY BUILDING LABORERS' STATEWIDE BENEFIT FUNDS**<br>**("Funds")**<br><br>**-and-**<br><br>**JOHN D. LAWRENCE, INC.**<br>**("Employer")** | **Before: J. J. PIERSON, Esq., Arbitrator**<br><br>**<u>AWARD and ORDER</u>**<br><br>**Re: Funds Contribution Collections** |

Appearing for the Funds
Bradley Parsons, Esq.
Jennifer Chang, Esq.
Kimberly Kemple, NJBLSBF

Appearing for the Employer:
None

This matter was presented to the undersigned Arbitrator on June 30, 2020, pursuant to Articles X ("Wages and Fringe Benefits"), XV ("Fringe Benefit Funds") and XVI ("Collection of Amounts Due Under Agreement") of an effective Collective Bargaining Agreement (hereinafter, "Agreement", entered into the record as Funds Exhibit F-1). Due notice of the hearing was forwarded to the Employer, with an itemized "Delinquency Report".

Based upon the proofs, the undersigned Arbitrator **FINDS** that:

1. The Employer is signatory to the Agreement with the Union, inclusive of contract provisions which bind and obligate the Employer to contribute to defined Funds under Article XV (collectively referred as the "Funds").

2. The Employer employed individuals covered by the terms and conditions of the Agreements during the payroll period **January 12, 2020 through February 2, 2020.**

3. As specifically provided in Articles X and XV of the Agreement, the Employer was, and is, obligated to contribute benefit contributions to the New Jersey Building Laborers' Statewide Funds' covered by the Agreement.[1] (See Funds Exhibit F-1).

1. Employer contribution under Article 15.00 - Pension and Welfare Funds Sustainability; 15.05 - Pension; 15.10 - Welfare; 15.20 - Annuity; 15.30 - New Jersey State Political Action Committee; 15.40- Working and Organizing Dues Checkoff; 15.50 - Laborers' Employers' Cooperation and Education Trust; 16.60 - Health & Safety; 15.70 - Construction Craft Laborers Training and Apprenticeship Fund of New Jersey and Delaware; 14.80- Building Contractors 'Association of New Jersey Industry Advancement Fund; 15.90 Due Date For Contribution Payments into Funds.

Upon analysis of the foregoing evidence, this Arbitrator further **FINDS** that:

4. The Employer failed to make required contributions to the Funds **January 12, 2020 through February 2, 2020**, in an estimated amount of **$3,670.24** (for hours of work performed), and violated Articles X and XV of the Agreement.

5. Article XVI, Collection of Amounts Due Under Agreement states:

> 16.20 Legal Remedies for Collection of Delinquencies. The Trustees or Administration of any fund due contribution pursuant to this Agreement shall be entitled all rights accorded by law including but not limited to the right to demand, receive, sue for, and take such steps, including the institution and prosecution of or the intervention in any proceeding at law or in equity or in bankruptcy that may be necessary or desirable in their discretion to effectuate the payment and collection of any sum or sums and costs required to be paid to the Welfare, Pension or Annuity Funds under this Agreement.
>
> 16.30 Costs of Collection.
>
> (a) In addition to the other provisions of this Agreement relating any such funds, in the event the Employer is delinquent in the payment of contributions to the Funds, or wages, the delinquent Employer shall also be required to pay attorneys' fees and court and arbitration costs, if any, whenever the services of an attorney or arbitrator are necessary to recover the amount due. The Union or the Trustees, in their discretion, may also assess the Employer with interest at the current rate.
>
> 16.50 Fund Rights and Duties.
>
> (c) The Employers agree that the trustees of the fund or funds shall have the right to require such reports by the Employers as arc necessary to the fulfillment of the agreements and declarations of trusts and the contracts of insurance, as may apply. The trustees and insurers shall also have the right to inspect at all reasonable times the payroll, employment and such other records of the Employer as are pertinent to questions of the accuracy or comprehensiveness of the reports of the Employers.
>
> Article XXII Arbitration and Grievances states:
>
> (i) This Article shall not limit the rights of the Trustees of the Funds herein from establishing arbitration procedures as permitted under the Declaration of Trusts, plan documents or the law.

6. The record established that the Employer did not make contributions and, as a result, the Funds pursued collection of the contributions due through the legal services of the law firm of Kroll Heineman & Carton, Metro Corporate Campus I, 99 Wood Avenue, Suite 307, Iselin, New Jersey.

7. As such, and in accordance with the provisions of Article XVI, the Employer shall pay a principal amount of **$3,670.24** to the Funds, plus: **$255.61** in interest; **$734.05** in liquidated damages; reasonable attorneys' fees in the amount of **$863.30** and the Arbitrator's fee of **$800.00**. The fee of the Arbitrator shall be deemed an obligation imposed on the Employer as a result of the Employer's failure to make timely contributions in the Funds.

Based on the above findings, it is hereby **AWARDED and ORDERED** that:

1. **JOHN D. LAWRENCE, INC.,** the Employer, shall pay forthwith to the Funds the amount of **$6,323.20** as specifically set forth in paragraph 7 above. A check shall be made payable to the "NJBLSBF - Delinquency Department" and forwarded to 3218 Kennedy Blvd., Jersey City, NJ 07306. A copy of the check shall be forwarded to the Fund's Counsel: Kroll Heineman & Carton, Metro Corporate Campus 1, 99 Wood Avenue, Suite 307, Iselin, New Jersey, 08830 attn: Albert G. Kroll, Esq.

2. Furthermore, the Employer shall remain obligated to the Funds, specifically for adhering to the terms and conditions of the Agreement and for submitting future contributions to the Funds in a timely manner; and

3. The Trustees of the Funds, in their discretion, shall cause an audit to be made of the payrolls and other such records of the Employer as are considered pertinent by the Trustees to determine the accuracy of information relating to the jobs and periods involved; and the Employer shall cooperate in the performance of said audit to determine the amount of benefit contributions owed, if any, to the Funds; and

4. Should the Employer does not pay the full Award amount, as set forth in paragraph 7 above, within fourteen (14) days of receipt of the within Opinion and Award, the Trustees of the Funds, in their discretion, shall issue a subpoena *duces tecum* and/or *ad testificandum* to the Employer for written or oral testimony regarding, but not limited to, the following documents:

A. Bank accounts;
B. Federal and state tax returns;
C. Financial statements;
D. Documents evidencing ownership interest in real estate, motor vehicle, any and all equipment, pension, life or profit sharing plans, stocks, bonds, securities or other tangible goods;
E. Accounts receivable and accounts payables;
F. Any judgments or liens by or against the Employer;
G. Any and all loans, promissory notes, bills of exchange or commercial paper made by or on behalf of the Employer;

5. Finally, in the event it is necessary for the Trustees of the Funds to enforce this AWARD and ORDER in court, the Employer shall be responsible for all court costs including, but not limited to, the filing fee of $400.00.

Dated: July 1, 2020

J. J. Pierson

**J. J. PIERSON, Esq., Arbitrator**